UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOYCE SONTHEIMER,

   Plaintiff,          Case No. 1:14-cv-417

v.                 HON. JANET T. NEFF

GENERAL MEDICINE, PC,

   Defendant.
_____/

## OPINION AND ORDER

Now pending before the Court are the parties' motions for summary judgment (Dkts 38 & 39), each seeking judgment as a matter of law on the claim alleged in Count I of Plaintiff's Complaint under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*. Having conducted a Pre-Motion Conference in this matter and having considered the parties' written briefs, stipulated statements of fact and accompanying exhibits, the Court finds that the relevant facts and arguments are adequately presented in these materials and that oral argument would not aid the decisional process. *See* W.D. Mich. LCivR 7.2(d). For the reasons that follow, the Court concludes that Defendant's motion is properly granted and Plaintiff's motion is properly denied.

### I. BACKGROUND

In August 2010, Plaintiff's husband, Gary Sontheimer, M.D., signed an employment agreement with General Medicine, PC, to provide physician services to patients at Orchard Grove Extended Care Center and Royalton Manor, LLC (JSF[1] ¶ 1). As a General Medicine employee, Dr.

---

[1]The parties stipulated and agreed to a joint statement of uncontested material facts related to Defendant's Motion for Summary Judgment (Dkt 41, J. Statement of Facts [JSF]).

Sontheimer's duties included, but were not limited to: (1) conducting medical assessments of patients, including obtaining a complete understanding of each patient's medical history; (2) providing treatment to patients; (3) maintaining and filling out patient charts and records; (4) writing patient prescriptions; and (5) completing all necessary paperwork and billing for his medical services to Medicare, Medicaid and/or private insurance (*id.* ¶ 2). General Medicine granted Dr. Sontheimer's request that his wife accompany him while he worked for General Medicine (*id.* ¶ 3).

From November 2010 until August 24, 2011, General Medicine assigned Dr. Sontheimer to treat patients at Royalton Manor (JSF ¶ 4). From November 2010 until August 24, 2011, the following General Medicine certified nurse practitioners worked at the facility: Rebecca Coccia, Kristi Houchin, Nancy Meeuwben, Margaret Stark and Linda Zured-Wood (*id.* ¶ 5).

From November 1, 2010 to January 17, 2014, General Medicine assigned Dr. Sontheimer to treat patients at Orchard Grove (JSF ¶ 6). From November 1, 2010 to January 17, 2014, two General Medicine certified nurse practitioners worked at the facility: Kristi Houchin and Nancy Meeuwben (*id.* ¶ 7).

On November 11, 2013, General Medicine informed Dr. Sontheimer it was terminating his contract without cause (JSF ¶ 8). General Medicine gave Dr. Sontheimer ninety (90) days notice of his termination without cause (*id.* ¶ 9).

On April 15, 2014, Plaintiff initiated this case. Plaintiff alleges that she worked for Defendant as an employee from December 2010 "until her separation on January 17, 2014" (Dkt 2, Compl. ¶ 5). Specifically, she alleges that she worked "as a Registered Nurse and clerical staff" at both Royalton Manor and Orchard Grove (*id.* ¶ 6). Plaintiff alleges that she did not work for her husband (*id.* ¶ 7). According to Plaintiff, her duties included the following:

2

     A.     Nursing care plans for the physician
     B.     Prepared prescriptions for the physician
     C.     Prepared Physician Quality Review Initiatives for MD
     D.     Patient Visits with the Doctor
     E.     Chart Oversights
     F.     Family Interactions
     G.     Schedule patients daily for the doctor
     H.     Billing & Coding at the end of the day on I-Pad
     I.      Assist nursing staff with numerous questions, RN's, LPN's as well
     J.     Assist at Codes
     K.     Write orders as directed by physician
     L.     Check wounds, rashes, etc. and assist nurses who did not have experience
     M.    Electronic E-Scribe for Doctor (Prescriptions)
     N.     Prior Authorizations for Health Insurance Company

(*id.* ¶ 9).

Count I of Plaintiff's two-count Complaint is titled "Unpaid Wages under the Fair Labor Standards Act and Michigan Law." Plaintiff alleges that she worked over 3,600 hours for Defendant, that Defendant failed to keep accurate payroll records reflecting the total hours worked in each pay period in violation of the federal and state law, and that Defendant's failure to pay her wages and compensation was a "willful violation of the federal and state overtime laws," entitling her to liquidated damages under federal and state law equal to the amount of unpaid wages or compensation (Dkt 2, Compl. ¶¶ 16-21).

In Count II, "Unjust Enrichment," Plaintiff alleges that "Defendant was unjustly enriched and an inequity resulted to Plaintiff Joyce Sontheimer because Defendant failed to pay her for the work performed that benefited [sic] the defendant" (Dkt 2, Compl. ¶ 30). She requests "Judgment against Defendant in the amount to be determined by the trier of fact, plus costs, interest, and a reasonable attorney fee."

Defendant filed an Answer on June 18, 2014, denying the majority of the allegations and setting forth affirmative defenses (Dkt 8). Following a Pre-Motion Conference in August 2014, the Court directed the parties to engage in discovery limited to Plaintiff's FLSA claim in Count I and thereafter participate in voluntary facilitative mediation (Order, Dkt 16). Mediation proved unsuccessful (Dkt 34), and the parties proceeded with briefing Defendant's motion for summary judgment. Defendant subsequently filed its motion and supporting brief (Dkt 38). Plaintiff filed her response in opposition, requesting summary judgment in her favor (Dkt 39). Defendant filed a reply (Dkt 40).

## II. ANALYSIS

### A. Motion Standard

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought." FED. R. CIV. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* In considering a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### B. Discussion

The parties agree that the motions at bar present only one issue for resolution by the Court, to wit: whether Plaintiff is an "employee" under the FLSA for purposes of the federal claim Plaintiff

4

alleges in Count I. Defendant accurately indicates that the FLSA claim in this case is unique in that the issue concerns not the character of the parties' employment relationship, but whether the parties had any employment relationship at all.

In *Solis v. Laurelbrook Sanitarium & Sch., Inc.*, 642 F.3d 518 (6th Cir. 2011), the Sixth Circuit provided a thorough summary of the governing law. Defendant also directs this Court's attention to two district court cases arising from employee/volunteer fact scenarios: *Beldin v. Travis County*, 85 F. App'x 373 (5th Cir. 2003), and *Emanuel v. Rolling in the Dough, Inc.*, No. 10 C 2270, 2012 WL 5878385 (N.D. Ill. Nov. 21, 2012). Defendant argues that "looking at the facts in *Beldin, Solis* and *Emanuel* and analyzing the undisputed facts here under the totality of the circumstances, including the primary benefit test, the economic reality of the working relationship between Mrs. Sontheimer and General Medicine, the total absence of a indicia of employment—no employment application; no resume; no W-4; no W-2; no Form 1099; no demand for wages or compensation; no coverage of medical malpractice insurance for Mrs. Sontheimer; no billing for Mrs. Sontheimer's alleged services; General Medicine's inability to bill Medicare in Michigan for services provided by a registered nurse; and the absence of any financial benefit to General Medicine for the alleged services performed by Mrs. Sontheimer—[should] lead[] this Court to but one legal conclusion: Mrs. Sontheimer was not an employee of General Medicine entitled to bring a claim under the FLSA" (Def.'s Br., Dkt 38 at 25-26).

In response, Plaintiff argues that she is an employee under the economic reality test inasmuch as (1) she worked for Defendant for over three years; (2) her skills as a registered nurse have traditionally been in the context of working for employers as an employee and not as an independent contractor; (3) she invested no capital equipment or materials for the job; (4) her opportunity for

5

profit or loss did not apply to her as she was employed and should have been paid a wage; (5) Defendant not only had the right to control the manner in which she performed those services, but directed her in doing so on a routine basis; and (6) the services that she provided were integral to the company's business (Pl.'s Resp., Dkt 39 at 15-16).

Plaintiff also argues that she is an employee under the regulations issued by the Department of Labor, specifically, 29 C.F.R. § 785.11-13, which expound on the phrase "suffered or permitted to work" (Pl.'s Resp., Dkt 39 at 17-19). Analogizing to the facts in *Mendez v. Brady*, 618 F. Supp. 579 (W.D. Mich. 1985), where the plaintiffs were migrant farm workers whose family members helped them pick blueberries, Plaintiff argues that "the 'family' of Dr. and Mrs. Sontheimer fit the same pattern and require[s] the same holding" (Pl.'s Resp., Dkt 39 at 18). Last, analogizing to the facts in *Okoro v. Pyramid 4 Aegis*, No. 11–C–267, 2012 WL 1410025 (E.D. Wis. April 23, 2012), Plaintiff opines that Defendant benefitted from her labor and that she "eventually wanted to be compensated" (*id.* at 19-24). Plaintiff requests that this Court hold that she was an employee under the FLSA and set the matter for trial to assess damages (*id.* at 24).

Defendant's argument has merit.

"Whether a particular situation is an employment relationship is a question of law." *Solis*, 642 F.3d at 521-22 (quoting *Fegley v. Higgins*, 19 F.3d 1126, 1132 (6th Cir. 1994)); *see also Donovan v. Brandel*, 736 F.2d 1114, 1116 (6th Cir. 1984) ("[T]the determination of whether a particular factual setting gives rise to coverage under the FLSA is a matter of law."). The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "Employee," in turn, is broadly defined as "any

individual employed by an employer." 29 U.S.C. § 203(e)(1). Last, "employ" includes "to suffer or permit to work." 29 U.S.C. § 203(g).

The definitions of the terms "employer," "employee" and "employ" in the FLSA are "exceedingly broad." *Solis*, 642 F.3d at 522. The regulations Plaintiff identifies similarly demonstrate the long reach of the Act. *See* 29 C.F.R. § 785.11 (explaining that "[w]ork not requested but suffered or permitted is work time, and indicating, for example, that "an employee may voluntarily continue to work at the end of the shift"); § 758.12 (instructing that the rule is "also applicable to work performed away from the premises or the job site"); and § 785.13 (instructing that "it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed").

However, the concept of employment under the FLSA is not limitless. *Solis, supra* (citing *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295 (1985)). Despite the broad definitions included in the Act, the United States Supreme Court long ago decided that the Act is "not so broad as to include those who, without any express or implied compensation agreement, might work for their own advantage on the premises of another." *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947). "[S]uch a construction would sweep under the Act each person who, without promise or expectation of compensation, but solely for his personal purpose or pleasure, worked in activities carried on by other persons either for their pleasure or profit." *Id.* The Supreme Court opined that "[t]he definition 'suffer or permit to work' was obviously not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another." *Id.*

"Whether an employment relationship exists under a given set of circumstances 'is not fixed by labels that parties may attach to their relationship nor by common law categories nor by classifications under other statutes.'" *Solis, supra* (quoting *Powell v. U.S. Cartridge Co.*, 339 U.S. 497, 528 (1950)). "Rather, it is the 'economic reality' of the relationship between parties that determines whether their relationship is one of employment or something else." *Id.* (quoting *Alamo*, 471 U.S. at 301) (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)).

In *Ellington v. City of E. Cleveland*, 689 F.3d 549, 554-55 (6th Cir. 2012), the Sixth Circuit observed that the "economic reality standard" is "not a precise test susceptible to formulaic application." The Sixth Circuit opined that relevant factors to consider may include "whether the plaintiff is an integral part of the operations of the putative employer; the extent of the plaintiff's economic dependence on the defendant; the defendant's 'substantial control of the terms and conditions of the work' of the plaintiff; the defendant's authority to hire or fire the plaintiff; and whether the defendant maintains the plaintiff's employment records and establishes the rate and method of payment." *Id.* at 555 (citations omitted). The appellate panel noted that the factors are not exhaustive and "'[n]o one factor is dispositive; rather, it is incumbent upon the courts to transcend traditional concepts of the employer-employee relationship and assess the economic realities presented by the facts of each case.'" *Ellington, supra* (case citations omitted); *see also Dunlop v. Dr. Pepper–Pepsi Cola Bottling Co. of Dyersburg, Tenn.*, 529 F.2d 298, 301 (6th Cir. 1976) (stating that in applying the economic reality standard, "the authoritative decisions require that the courts consider the total relationship rather than isolated factors").

The Fifth Circuit's decision in *Beldin,* one of the cases upon which Defendant relies, is instructive. There, the plaintiff, without requesting or receiving wages, performed services to assist

8

her mother, Sally Decker, who was employed by the defendant. 85 F. App'x at 373. The plaintiff provided no objective indicia of an employment relationship. *Id.* The Fifth Circuit affirmed the trial court's decision to grant the defendant judgment as a matter of law, holding that while the FLSA ought to be interpreted broadly, "there was no evidence that the plaintiff should be considered an employee under the Fair Labor Standards Act." *Id. See also Dunlop*, 529 F.2d at 301 (reasoning that the workers were not "employees" under the FLSA but merely "a convenience" for the drivers of the soft drink delivery trucks).

Like the plaintiff in *Beldin*, Plaintiff had no express or implied agreement with Defendant that she would perform services to assist her husband in exchange for wages, even assuming arguendo that Plaintiff herself "eventually wanted to be compensated" (Pl.'s Resp., Dkt 39 at 23). The record does not support the proposition that Defendant substantially controlled the terms and conditions of her work, claimed any authority to hire or fire her, or maintained any employment record, including a rate or method of payment. Neither does the record support the proposition that Plaintiff was an integral part of Defendant's operations. Rather, the record supports the proposition that her activities were integral to, and wholly dependent on, her husband's employment with Defendant and that her activities concluded when Dr. Sontheimer's employment was terminated. Last, the record does not support the proposition that Plaintiff was economically dependent on Defendant inasmuch as Plaintiff does not dispute that she did not apply to Defendant for paid employment but was merely granted permission by Defendant to accompany Dr. Sontheimer. *See, e.g., Emanuel*, 2012 WL 5878385, at *5 (determining that where the plaintiff "chose to assist [the defendant] with his duties," the plaintiff was not "economically dependent" and not an "employee"

within the meaning of the FLSA). In sum, drawing all reasonable inferences in Plaintiff's favor, the Court agrees that the factual setting in this case does not give rise to coverage under the FLSA.

The cases upon which Plaintiff relies do not compel a contrary result. The Court finds inapposite the decision in *Mendez*, 618 F. Supp. at 582-83, where migrant families helped in the blueberry fields to meet the registered workers' piece rate. *See Ellington*, 689 F.3d at 555 (prescribing "a case-by-case approach, whereby the court considers the 'circumstances of the whole business activity'") (quoting *Donovan*, 736 F.2d at 1116). The facts in *Okoro*, 2012 WL 1410025, at *9, are also dissimilar from the facts at bar inasmuch as both parties in *Okoro* contemplated compensation for the plaintiff, albeit with different expectations. *See Walling*, 330 U.S. at 152 ("The Act's purpose as to wages was to insure that every person *whose employment contemplated compensation* should not be compelled to sell his services for less than the prescribed minimum wage.") (emphasis added).

Therefore, the Court determines that Defendant has demonstrated that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law on the federal claim Plaintiff states in Count I.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Dkt 38) is properly granted, and Plaintiff's request for summary judgment in her favor (Dkt 39) is denied. Having dismissed the claim over which it has original jurisdiction, the Court, in its discretion, declines to exercise supplemental jurisdiction over the remaining state-law claims. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010) ("When all federal claims are dismissed before trial, the balance of

considerations usually will point to dismissing the state law claims...."). Because this Opinion and Order resolves the last pending claim in this case, the Court will also enter a corresponding Judgment. Accordingly:

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Dkt 38) is GRANTED, Plaintiff's Cross-Motion for Summary Judgment (Dkt 39) is DENIED, and Plaintiff's claim in Count I under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, is DISMISSED with prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's state-law claims in Counts I and II are DISMISSED without prejudice.


DATED: October 7, 2015            `/s/ Janet T. Neff`
                                  JANET T. NEFF
                                  United States District Judge